**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCENT TANG,<br>individually and derivatively,<br><br>    *Plaintiff*,<br><br> vs.<br><br>WILSON TANG,<br><br>    *Defendant*,<br><br> and<br><br>NOM WAH DIM SUM PARLOR, INC.,<br><br>    *Nominal Defendant.* | Case No.: _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vincent Tang ("V. Tang" or "Plaintiff") by and through his attorneys Lewis & Lin LLC, for his Complaint against Defendant Wilson Tang ("Defendant") and on behalf of nominal Defendant Nom Wah Dim Sum Parlor, Inc. ("NW, Inc."), alleges as follows:

**STATEMENT OF THE CASE**

1.  V. Tang brings action to assert direct and derivative claims arising out of the Federal Lanham Act, the Declaratory Judgment Act and related state law claims. As alleged more fully below, at the center of this case is NW, Inc., which operates Nom Wah Tea Parlor, a storied dim sum restaurant that is a fixture in Manhattan's Chinatown. Nom Wah Tea Parlor has been part of Plaintiff's family for years, but the Nom Wah Tea Parlor brand goes back even further—back to the 1920s. Nom Wah Tea Parlor stands as the oldest continuously operating Chinese restaurant in Manhattan's Chinatown and is indeed an institution.

2.  For years and continuing to today, Nom Wah Tea Parlor has been and is run as a closely-held, family restaurant. Beginning in or about the 1970s, a long-time family friend of

Plaintiff's father, Fred Tang ("F. Tang"), was operating the Nom Wah Tea Parlor, just across the street from the apparel business F. Tang was operating at the time. When that family friend decided to stop operating the Nom Wah Tea Parlor, he and F. Tang reached an agreement, and Nom Wah Tea Parlor has been operated within F. Tang's family ever since.

3.      When the Tang family began operating the Nom Wah Tea Parlor, it continued being operated as a closely-held, family restaurant. The 50/50 owners were initially F. Tang and Defendant, F. Tang's nephew.

4.      As alleged more fully below, almost immediately upon becoming a 50/50 owner, Defendant began what would become a series of transactions and acts that improperly favored Defendant and his personal interests. Moreover, Defendant's active concealment of the myriad of transactions favoring himself has been ongoing and continuous. Plaintiff, having taken over his father's ownership share in NW, Inc., is still learning about new companies, business ventures and financial accounts set up by Defendant bearing the famous and valuable "Nom Wah" name and thus trading off of an ostensible connection to the original Nom Wah Tea Parlor. Defendant has been and, upon information and belief, is setting up new companies, business ventures and financial accounts without the knowledge of Plaintiff—his co-owner.

5.      At least one particularly egregious example of Defendant's pattern of disloyalty to NW, Inc. and his co-owner, V. Tang surrounds trademarks for the valuable Nom Wah brand. Defendant appropriated two trademarks—Reg. Nos. 4,186,245 and 4,197,564 (collectively, the "2011 Marks")—covering the Nom Wah Tea Parlor brand, applied for by NW, Inc., by assigning them to himself personally—without informing either V. Tang or F. Tang. Defendant obtained a third trademark—Reg. No. 5,535,663 (the "2018 Mark")—using the Nom Wah name on behalf of a new corporate entity, also bearing the Nom Wah name, and assigned that trademark to

himself personally as well—again never informing either V. Tang or F. Tang.

6.    Plaintiff cannot continue to operate with a co-owner who is appropriating business opportunities for himself that depend on and leverage the famous Nom Wah name, and Plaintiff cannot continue to operate with a co-owner who is actively concealing the breadth and scope of Defendant's appropriation of business opportunities that properly belong to NW, Inc. Accordingly, Plaintiff brings this lawsuit.  Plaintiff primarily seeks the enumerated forms of equitable relief that will release him and NW, Inc. from further disloyal actions from Defendant.

## PARTIES

7.    Plaintiff V. Tang is an individual domiciled in the State of New York, New York County.

8.    Defendant is an individual domiciled in the State of New York, New York County.

9.    Nominal Defendant NW, Inc. is a corporation duly organized under and existing pursuant to the laws of the State of New York and maintains its principal place of business at 13 Doyers Street in New York, New York 10013.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Declaratory Judgment Act, 28 U.S. Code § 2201 *et seq.*, and the laws of the State of New York. This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 *et seq.*

11.    This Court has supplemental jurisdiction over the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal

claims, and because the exercise of supplemental jurisdiction serves the interests of judicial

economy, convenience and fairness to the parties.

## BACKGROUND COMMON TO ALL CLAIMS

### The Storied History of the Nom Wah Brand

12.    The origin of what is now the well-known Nom Wah brand is the quintessential

immigrant success story that is one of the hallmarks of America.

13.    In the 1920s, the first Nom Wah Tea Parlor opened in lower Manhattan.  In the

1960s, Nom Wah Tea Parlor first moved to its current 13 Doyers Street location and has been

there ever since.

14.    In the 1970s, Wally Tang, a family friend of F. Tang, took over the Nom Wah Tea

Parlor at the current Doyers Street location.  Wally Tang had worked at Nom Wah since 1950,

when he was 16 years old.

15.    Over the decades that Nom Wah Tea Parlor has been in business, always on

Doyers Street in lower Manhattan, it has become a Chinatown landmark and institution.  Its

appearance and menu have remained relatively unchanged over the decades, and that constancy

is indeed part of what makes it so unique and famous.  The fact that Nom Wah Tea Parlor has

remained relatively unchanged and in the same location for decades has fostered in the Nom

Wah Tea Parlor and the overall Nom Wah brand a reputation for exclusivity, reliability and

uniqueness.

### Plaintiff and His Family's Involvement in Nom Wah Tea Parlor

16.    F. Tang immigrated to the United States from China in or about the 1970s.  F.

Tang reunited with Wally Tang in the United States as both families tried to make their way in

America.  Both families worked diligently and pursued a variety of different business ventures

while keeping in contact with one another, supporting one another as fellow immigrants and maintaining their connection to certain Chinese traditions.

17.    In or about 2009, Wally Tang—who had been operating the Nom Wah Tea Parlor restaurant—was planning to sell the restaurant's space and leave the business.  After a conversation with F. Tang, Wally Tang decided that, rather than turn the restaurant space over to a stranger, Wally Tang would sell to his long-time friend, F. Tang.

18.    Wally Tang and F. Tang concluded their agreement over the proverbial handshake.  There was no contract written or lawyers involved; the two long-time friends operated on trust.  Wally Tang and F. Tang each knew that the other would be loyal and fulfill their side of their unwritten agreement.

19.    At or about the same time that Wally Tang and F. Tang reached their agreement, Defendant was involved in the latest of a series of his unsuccessful business ventures.  Defendant had tried an assortment of different businesses over the years, some with the financial help of F. Tang.  When F. Tang agreed to purchase Nom Wah Tea Parlor's space, it seemed to be a golden opportunity for Defendant as well.

20.    Defendant indeed capitalized on his uncle's decision to purchase the Nom Wah Tea Parlor space.  Defendant and F. Tang agreed that the Nom Wah Tea Parlor restaurant would continue with Defendant operating it.  As was the case when Wally Tang and F. Tang reached their agreement, F. Tang and Defendant did not formalize their agreement in writing; they were after all uncle and nephew.  They operated on trust, but here, the trust was misplaced.

21.    Uncle (F. Tang) and nephew (Defendant) agreed between themselves that the Nom Wah Tea Parlor would continue as the long-running dim sum restaurant and Chinatown institution it already was by that time.  Defendant would run the restaurant day-to-day, but F.

Tang was the co-owner of the business.

22.     In August 2010, NW, Inc. was registered with the New York Division of Corporations, listing Defendant as the Chief Executive Officer.  NW, Inc. was the operating company for the Nom Wah Tea Parlor under the ownership of F. Tang and Defendant.

23.     At all times, NW, Inc. has been and is a closely-held corporation with only two shareholders, each holding equal, 50% shares in NW, Inc.

24.     Although W. Tang would be responsible for day-to-day operations of Nom Wah Tea Parlor, it was understood between W. Tang and F. Tang that they were co-owners, owning the business 50/50.  With that understanding, a joint business account was opened in June 2011 (the "Joint Account") with both F. Tang and Defendant as account holders.

25.     As the 50% owner of NW, Inc., Defendant owed a duty of loyalty to NW, Inc. and to his co-owner.  Initially, that co-owner was F. Tang; eventually, as alleged below, Plaintiff became the co-owner in NW, Inc.

**The Problems Begin**

26.      Almost immediately, and unbeknownst to F. Tang, Defendant began laying the ground work for what would become a years' long pattern of diverting money and opportunities away from NW, Inc. for his personal benefit.

27.     In July 2011, Defendant closed the Joint Account without informing F. Tang. Defendant opened a new account—listing, upon information and belief, only himself as the account holder—unbeknownst to his co-owner, F. Tang.  This would become Defendant's pattern.  In breach of his duty of loyalty, Defendant would go outside of the NW, Inc. entity, create new corporate entities and create new financial accounts—concealing his activities from NW, Inc. and his co-owner.

28.     In December 2011, Defendant submitted two trademark applications that would ultimately register as the 2011 Marks—one claiming a word mark for Nom Wah Tea Parlor and a second design mark for the Chinese characters anglicized as Nom Wah.  F. Tang encouraged Defendant to file those applications because F. Tang knew that there was huge value in the Nom Wah brand that should be protected and maintained as an asset for NW, Inc.

29.     Beginning in or about 2013, Defendant began leveraging the famous Nom Wah name and his connection to the Nom Wah Tea Parlor to open his own satellite ventures that leveraged the Nom Wah name.  For example, Defendant opened Fung Tu, which later changed its name to Nom Wah Tu.  He opened a market stall-style Nom Wah outpost called Nom Wah Kuai.  He opened Nom Wah Delancey.  All of those satellite ventures ultimately closed.

30.     Again, per his pattern, Defendant did not consult with F. Tang prior to opening any of Defendant's satellite ventures.  Defendant would only inform F. Tang when the ventures were essentially a *fait accompli*, at which point F. Tang could not effectively object.

31.     To date, neither F. Tang nor Plaintiff has received a full accounting of all of Defendant's satellite ventures.  Defendant has opened and closed several of his satellite ventures—diluting Nom Wah Tea Parlor unblemished record of commercial success and longevity—without any explanation to F. Tang, Plaintiff and/or NW, Inc.  By way of example, Defendant has not explained why his satellite ventures were started, how much revenue or profit they generated, where any revenue or profit was deposited, what their operating expenses were, or why they were closed.  However, what is clear is that they all leveraged the name and fame of Nom Wah Tea Parlor, operated by NW, Inc.  As one of two owners of NW, Inc., Defendant had a duty to provide NW, Inc. and his co-owner with this information.

**Plaintiff Joins the Business**

32.     In or about the first half of 2015, Plaintiff joined the family business of Nom Wah

Tea Parlor.  While the expectation among F. Tang, Defendant and V. Tang was that Plaintiff

would eventually take his father's role as a co-owner in NW, Inc., Plaintiff initially was another

worker at Nom Wah Tea Parlor, learning the business from the ground up.

33.     When Plaintiff first joined his family's business, and continuing to today,

Defendant was secretive about the financial and operational aspects of how NW, Inc. was run

and what additional ventures were being run or started leveraging the Nom Wah brand.  Upon

information and belief, Defendant personally resented Plaintiff's participation in the business of

Nom Wah Tea Parlor from the beginning.  Defendant kept an iron grip on the various ventures

and associated financial accounts using the Nom Wah name, only occasionally providing NW,

Inc. or his co-owner certain limited amounts of information, and even then, providing only

information that Defendant was also willing to share on his public social media accounts.

Nonetheless, Plaintiff began to notice after working at Nom Wah Tea Parlor that Defendant was

paying his wife a six-figure salary, even though Defendant's wife was never visibly working at

Nom Wah Tea Parlor.  Upon information and belief, since Plaintiff began working at Nom Wah

Tea Parlor in or about 2015, Defendant began paying himself and his wife excessive

compensation.

34.     For approximately three years, Plaintiff worked at Nom Wah Tea Parlor every

day.  Acknowledging Plaintiff's hard work, F. Tang decided it was time that Plaintiff formally

take over F. Tang's 50% ownership share in NW, Inc., and F. Tang made his intention to transfer

his 50% ownership share to Plaintiff clear to Defendant.  A stock certificate granting Plaintiff

half of the 200 shares in NW, Inc. was executed in or about December 2018 and was duly

recorded with the New York Secretary of State.  The Certificate of Incorporation for NW, Inc.
was corrected to reflect both Plaintiff and Defendant as joint incorporators.

**Defendant's Misappropriation of Valuable Intellectual Property**

35.    As alleged above, the fame associated with the Nom Wah brand was built up over
decades—predating Plaintiff and his family's involvement with Nom Wah Tea Parlor.  Nom
Wah Tea Parlor is a New York institution in Chinatown.

36.    In 2018, an entity called Nom Wah Tea Parlor Corporation, with a business
address at 13 Doyers Street, applied for a standard character mark for "Nom Wah."  This mark
was registered in August 2018.  This mark was in addition to the 2011 Marks, applied for by
NW, Inc. and registered in 2011.  The 2018 Mark should not have been applied for by Nom Wah
Tea Parlor Corporation because it is properly the intellectual property of NW, Inc.

37.    By an assignment agreement (the "Fraudulent Assignment") signed only by
Defendant—and entirely unknown to Plaintiff or F. Tang until approximately 2021—Defendant
assigned all three marks, including the two 2011 Marks owned by NW, Inc., to himself
personally.  The fraudulent nature of the Fraudulent Assignment is apparent on its face inasmuch
as:  (a) it is dated September 1, 2014, purporting to cover three trademarks, but (b) one of
trademarks purportedly subject to the assignment was not even applied for until May 2018.  In
addition, the assignment states that assignor NW, Inc. had approval of its owner—singular—to
assign the trademarks to Defendant, but that was untrue.  NW, Inc. has at all times had two
owners—plural.  Had either V. Tang or F. Tang been aware of any plan to assign the Nom Wah
marks to Defendant personally, they would have objected and prevented the assignment of the
valuable Nom Wah 2011 Marks to Defendant personally.  With respect to the 2018 Mark, which
should have been applied for by NW, Inc. and with the knowledge and approval of Plaintiff as

NW, Inc.'s 50% co-owner, the 2018 Mark should not be registered in the name of Nom Wah Tea Parlor Corporation and should not have been assigned to Defendant personally.

38.     Defendant's counsel then filed the Fraudulent Assignment with the United States Patent and Trademark Office in August 2021.

39.     Neither F. Tang or V. Tang learned about the Fraudulent Assignment until approximately early 2021.

40.     In or about 2018, Defendant began asking V. Tang to obtain Nom Wah Tea Parlor's iconic recipes from the restaurant's chefs for a cookbook to be published.  The Nom Wah Cookbook was published in 2020.  The cookbook—which tells the story of Nom Wah Tea Parlor's long history and publishes its iconic recipes, is an opportunity that properly belongs to NW, Inc., but upon information and belief, Defendant has appropriated that opportunity for himself.  To date, Plaintiff is not aware of where any revenue from The Nom Wah Cookbook has gone or is going because Defendant has deliberately concealed the revenue structure for The Nom Wah Cookbook from Plaintiff.  As one of two owners of NW, Inc., Defendant has a duty to disclose—at a minimum—the nature of the deal and the revenue structure for The Nom Wah Cookbook.

**The Final Rupture in the Relationship Between the Co-Owners**

41.     In the years since Plaintiff has worked at Nom Wah Tea Parlor and become a 50% owner in NW, Inc., the business relationship with Defendant has deteriorated.  Plaintiff has been increasingly concerned about Defendant's unwillingness to be transparent about all of the business ventures and financial accounts associated with the Nom Wah name.  As co-owners of NW, Inc., Defendant has a fiduciary duty to be loyal to Plaintiff, his co-owner, and to the NW, Inc. entity that they own together.  That duty includes but is not limited to the duty to:  (a) be

transparent about financial transactions involving the Nom Wah brand and (b) be loyal to the success of the NW, Inc. and Nom Wah Tea Parlor.  Defendant has not fulfilled his duty in either respect.

42.     In or about the middle of 2021, Nom Wah Tea Parlor's long-time head chef reached a decision to retire and approached Defendant with a proposal to retire in or about October of 2021.  Defendant requested that the chef stay until the end of 2021.

43.     With the impending retirement of Nom Wah Tea Parlor's long-time head chef coupled with the impact of COVID, Defendant abruptly suggested in or about the end of 2021 or the beginning of 2022 that Plaintiff take over the running of Nom Wah Tea Parlor entirely. However, Defendant had a list of demands, including:  (a) that he be given an ongoing share of the profits; (b) various marketing and licensing fees associated with the use of the Nom Wah brand, and (c) certain "triggering" conditions that, if met, would give Defendant an immediate right, at his sole option, to re-take control of the running of Nom Wah Tea Parlor.  Plaintiff, believing those conditions to be unreasonable, could not and did not agree because, in part, Plaintiff believed that Defendant's threat to suddenly re-take control of Nom Wah Tea Parlor would be disruptive and damaging to the business.

44.     Before agreeing to take over all of the operational responsibilities for Nom Wah Tea Parlor and/or agreeing to Defendant's ongoing profit-sharing demand, Plaintiff insisted that he be allowed full visibility into the financial accounts associated with Nom Wah Tea Parlor and NW, Inc.

45.     Defendant provided Plaintiff with Defendant's access credentials for an American Express Account, a Chase account and Citibank account in or about 2022.  However, Plaintiff has ample reason to believe that Defendant still has not provided all of information to which

Plaintiff is entitled and that relate to the use of the Nom Wah brand. Plaintiff is still learning about new corporate entities bearing the Nom Wah name, and Plaintiff has reason to believe that some or all of them have financial accounts associated with them into which Plaintiff has no visibility. By way of example, within days of filing this Complaint, Plaintiff learned of an entity called Nom Wah Tea Parlor Corporation applied for the 2018 Mark, which purports to cover the name "Nom Wah." Along similar lines, Plaintiff has—only within the last month or so— become aware of a variety of Nom Wah-branded corporate entities, including but not limited to Nom Wah Movie LLC, Nom Wah Canal, Inc., Nom Wah Co., Inc, and Nom Wah Delancey Corp. While some of those entities may no longer be active, they represent breaches of at least Defendant's fiduciary duty of loyalty inasmuch as Defendant withheld and concealed their existence from Defendant and has not disclosed the financial dealings of those entities and/or the books and records associated with those entities to Plaintiff and/or NW, Inc.

46.     Even with the limited access Defendant has provided to an isolated Citibank account, American Express account and Chase account, it is apparent that Defendant has been improperly appropriating funds that should be used for corporate, NW, Inc. business for his own personal benefit. The examples of Defendant's misappropriation include, but are not limited to: (a) transfers totaling approximately $490,000 from a Nom Wah Dim Sum Parlor financial account to Defendant personally, something Defendant has admitted to Plaintiff verbally; (b) significant expenditures on Nom Wah Tea Parlor American Express cards for Defendant and his wife that include charges for Defendant's personal Porsche and Defendant's personal membership fees for Soho House and (c) mortgage payments for Defendant's personal home from a corporate account. Plaintiff has reason to believe and does believe that there are additional Nom Wah financial accounts that Defendant has access to but which he is concealing

from Plaintiff.

### FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
### <u>(Derivatively on behalf of NW, Inc.)</u>

47.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

48.     As a shareholder and co-owner of the closely-held NW, Inc., Defendant owes a fiduciary duty to NW, Inc. and to Plaintiff as the only other shareholder and co-owner.

49.     Defendant engaged in various forms of self-dealing and concealed such misappropriation from NW, Inc.

50.     Defendant intentionally concealed his self-dealing in order to continue that self-dealing over a longer period of time.

51.     Defendant has breached and continues to breach his fiduciary duty to NW, Inc. Defendant's past breaches include, but are not limited to:  (a) using corporate entities other than NW, Inc. to apply for at least one trademark, the 2018 Mark, that purport to cover the Nom Wah brand without the knowledge of NW, Inc. and/or Plaintiff; (b) using the Fraudulent Assignment to assign and appropriate to Defendant personally three trademarks covering the Nom Wah brand and (c) using funds and financial accounts properly belonging to NW, Inc. for his personal use.

52.     Because Defendant's breaches continue, NW, Inc. is entitled to a judicial declaration declaring that Defendant has breached his fiduciary duty and an injunction prohibiting Defendant from continuing to operate as the co-owner of NW, Inc.  In addition, with respect to the 2018 Mark, that mark properly belongs to NW, Inc.  It should not have been applied for or registered to Nom Wah Tea Parlor Corporation, and Defendant and/or any corporate entity established by or under Defendant's control and/or any agents, licensees,

13

distributors, attorneys, servants, employees, affiliates and assigns, or other persons acting in concert or participation with Defendant should be enjoined from any further use of the 2018 Mark until any and all rights to the 2018 Mark are decided.

### SECOND CAUSE OF ACTION
### Accounting
### (Derivatively on behalf of NW, Inc.)

53.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 52 as though fully set forth here.

54.     NW, Inc. is entitled to have complete access to all of the books and records showing, at a minimum, the financial accounts of NW, Inc.

55.     Moreover, because Defendant has repeatedly set up new corporate entities and financial accounts that use the Nom Wah name, while concealing them from NW, Inc. and its co-owner, NW, Inc. is entitled to a full accounting of the myriad of ways in which Defendant has used the Nom Wah name, including, at a minimum:  (a) a list of all corporate entities established by or at the request or with the knowledge of Defendant and/or any agents, licensees, distributors, attorneys, servants, employees, affiliates and assigns, or other persons acting in concert or participation with Defendant—whether or not those entities are still active; (b) all financial or credit accounts associated with the entities or persons identified in subpart (a)—whether or not those financial accounts are still open; (c) a list of any and all intellectual property granted to or applied for by the entities or persons identified in subpart (a).

56.     NW, Inc. is also entitled to, at a minimum, a complete accounting of the profits associated The Nom Wah Cookbook as well as any additional financial venture Defendant has undertaken using the Nom Wah brand that may be revealed in the course of this case.  Upon information and belief, although The Nom Wah Cookbook uses the recipes that are the centerpiece of the Nom Wah Tea Parlor and its history as an American success story, the profits

associated with The Nom Wah Cookbook are being improperly diverted by Defendant from NW, Inc.

57.     Defendant owes fiduciary duties to NW, Inc. but has improperly withheld or concealed from NW, Inc. a full account of Defendant's use of the Nom Wah name and associated revenue(s) generated from that use.

58.     NW, Inc. does not have an adequate remedy at law and without the accounting requested, NW, Inc. cannot determine the full scope of the harm Defendant has caused NW, Inc. and/or the Nom Wah brand.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(Derivatively on behalf of NW, Inc.)**

59.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth here.

60.     Defendant inappropriately misappropriated cash, revenues and the goodwill of Nom Wah brand that belong to NM, Inc. by at least the following actions: (a) using NM, Inc.'s cash receipts and revenue for Defendant's own benefit and (b) misappropriating the goodwill and value of the Nom Wah brand and marks for Defendant's own benefit.

61.     As a result of Defendant's misappropriation of NW, Inc.'s resources, Defendant was enriched unjustly.

62.     NW, Inc. was harmed by Defendant's misappropriation. NW, Inc. is also continuing to be harmed because Defendant continues to mask the extent and scope of his misappropriation of NW, Inc.'s resources.

63.     It is against equity and good conscience to permit Defendant to retain the funds and the value of Nom Wah brand or marks.

64.     Defendant has thus been unjustly enriched and has damaged NW, Inc. in an amount to be determined at trial, but believed to be no less than $1,000,000.

## FOURTH CAUSE OF ACTION
### Declaratory Judgment As To The Fraudulent Assignment
### (Derivatively on behalf of NW, Inc.)

65.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 64 as though fully set forth here.

66.     In accordance with Federal Rule of Civil Procedure 57, NW, Inc. seeks a speedy hearing with respect to the following matters as to which a declaratory judgment is sought.

67.     The controversy with respect to NW, Inc.'s rights to the Nom Wah marks at issue in the Fraudulent Assignment (the 2011 Marks and the 2018 Mark) is sufficiently concrete and immediate as to be justiciable.

68.     The Fraudulent Assignment is fraudulent on its face for at least the following reasons:  (a) it is dated September 1, 2014, purporting to cover three trademarks, but (b) one of trademarks purportedly subject to the Fraudulent Assignment, the 2018 Mark, was not even applied for until May 2018.  In addition, the assignment states that assignor NW, Inc. had approval of its owner—singular—to assign the trademarks to Defendant, but that was untrue. NW, Inc. has at all times had two owners—plural.

69.     Because Defendant concealed the Fraudulent Assignment, NW, Inc. and/or Plaintiff did not become aware of it until 2021.  Had NW, Inc. and/or either of Defendant's co-owners, Plaintiff or F. Tang, been informed at the time the Fraudulent Assignment was actually contemplated, they would have objected to Defendant appropriating the Nom Wah brand for himself.

70.     Because the Fraudulent Assignment is indeed fraudulent, NW, Inc. is entitled to a

judicial declaration:  (a) declaring the Fraudulent Assignment null and void and of no legal effect

to the extent that it assigns the 2011 Marks to Defendant and (b) an order directing that

Defendant take all necessary actions with the United State Patent & Trademark Office to clarify

the *bona fide* ownership of the 2011 Marks.  With respect to the 2018 Mark, NW, Inc. is entitled

to an order enjoining Defendant and/or any corporate entity established by or under Defendant's

control and/or any agents, licensees, distributors, attorneys, servants, employees, affiliates and

assigns, or other persons acting in concert or participation with Defendant from any and all

further use of that Mark inasmuch as that Mark is properly the property of NW, Inc.  Until any

and all rights to the 2018 Mark are decided, Defendant and/or any corporate entity established by

or under Defendant's control should be enjoined from using it.

### FIFTH CAUSE OF ACTION
### Fraud on the United States Patent & Trademark Office
### (Derivatively on Behalf of NW, Inc.)

71.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 70 as

though fully set forth here.

72.     The Fraudulent Assignment was registered with the United States Patent &

Trademark Office (the "USPTO") in August 2021.

73.     Under the Lanham Act, a party that procures a registration of a trademark with the

USPTO by a false or fraudulent declaration or representation, or any other false means, is liable

in a civil action to the injured party.

74.     The Fraudulent Assignment to the USPTO was false in at least the following

respects:  (a) it represented itself as having been executed with the approval of NW, Inc.'s

owner—singular—but NW, Inc. has and at all relevant times had two owners—plural; (b) the

Fraudulent Assignment is falsely backdated to September 1, 2014, while purporting to cover a

trademark that was not applied for until 2018 and (c) the Fraudulent Assignment represents that the Assignment was made with the awareness and approval of NW, Inc. when in fact NW, Inc. was never made aware of the Fraudulent Assignment purporting to transfer marks covering the valuable and famous Nom Wah name from NW, Inc. to Defendant personally until at least 2021.

75.     As a result of the Fraudulent Assignment, NW, Inc. is entitled to damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Cancellation of Trademark Registration No. 5,535,663**
**(Derivatively On Behalf of NW, Inc.)**

76.     NW, Inc. realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth here.

77.     As alleged herein, Defendant has exhibited a pattern of creating corporate entities without the knowledge of NW, Inc. and/or Defendant's co-owners in NW, Inc.  Upon information and belief, Defendant created an entity called Nom Wah Tea Parlor Corporation that, among other things, applied for and obtained the 2018 Mark, Reg. No. 5,535,663. However, the 2018 Mark, which purports to cover the Nom Wah brand name, is properly considered the property of NW, Inc. and should have been applied for and registered to NW, Inc.

78.     The 2018 Mark that is the subject of U.S. Trademark Reg. No. 5,535,663 consists of or comprises deceptive matter that falsely suggests a connection to the iconic Nom Wah Tea Parlor and/or NW, Inc. and should therefore be cancelled pursuant to 15 U.S.C. § 1052(a).

## SEVENTH CAUSE OF ACTION
### Dilution Under 15 U.S.C. §1125(c)
### (Derivatively On Behalf of NW, Inc.)

79.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 78 as though fully set forth here.

80.     The Nom Wah marks are famous and distinctive under 15 U.S.C. §1125(c), as the Nom Wah name is recognized by diners nationwide and internationally and serves as an iconic symbol of Chinese dim sum.

81.     Defendant's misappropriation of the Nom Wah marks in connection with other restaurants dilute the uniqueness and iconic status of the original Nom Wah Tea Parlor location at 13 Doyers Street and, upon information and belief, do not live up to the same standards of quality as the original.  Defendant's actions have caused a dilution of the distinctive quality of the Nom Wah Marks, to the detriment of NW, Inc.

82.     Defendant is using the designation the Nom Wah marks with the willful intent to leverage the renowned reputation of the original Nom Wah Tea Parlor and to cause dilution of the Nom Wah name.

83.     As alleged in this Complaint, the Fraudulent Assignment should have no legal effect as to the 2011 Marks because it is fraudulent on its face and does not legally affect an assignment of the 2011 Marks to Defendant.  As further alleged in this Complaint, the 2018 Mark should be canceled because it should have been applied for and registered to NW, Inc., not Nom Wah Tea Parlor Corporation.  In any event, NW, Inc. maintains common law trademark rights in the Nom Wah brand that are being diluted by Defendant.

84.     NW, Inc. is suffering irreparable harm and damage as a result of Defendant's actions, such that money damages would not adequately compensate NW, Inc. for the harm to

its proprietary rights, established goodwill and business reputation, and such that a permanent injunction enjoining Defendant's further use of the Nom Wah marks or the Nom Wah brand is necessary.

85.    For at least these reasons, Defendant's actions constitute trademark dilution under 15 U.S.C. §1125(c).

### DIRECT CLAIM

86.    Plaintiff brings the following claim on behalf of himself individually.

### EIGHTH CAUSE OF ACTION
### Breach of the Duty of Loyalty

87.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 86 as though fully set forth here.

88.    Plaintiff is a 50% shareholder of NW, Inc., and Defendant is the other 50% owner.

89.    As co-owners of NW, Inc., Defendant owes a duty of loyalty to Plaintiff.

90.    Defendant has engaged in a variety of self-dealing, including intentionally and wrongfully diverting NW, Inc. funds to Defendant personally and thereby reducing or withholding distributions from Plaintiff.  In addition, Defendant has oppressed Plaintiff by, among other things refusing to provide the necessary transparency into the finances of NW, Inc. and/or the various Nom Wah-branded business ventures Defendant is engaging in, has engaged in or plans to engage in—all of which may impact the value the original Nom Wah Tea Parlor that Plaintiff is attempting to operate.

91.    Upon information and belief, Defendant has further oppressed Plaintiff by, among other things, paying Defendant and his wife excessive compensation.  Upon information and belief, beginning in or about 2015, Defendant began paying his wife a salary because he resented

Plaintiff's work at Nom Wah Tea Parlor, and that salary increased in excessive amounts for approximately five years until about 2020, after which her salary was reduced due to the COVID pandemic. However, Defendant's wife was not visibly working at Nom Wah Tea Parlor. Plaintiff believes that Defendant began paying his wife a salary in retaliation for Plaintiff's work at Nom Wah Tea Parlor and to avoid paying Plaintiff a salary commensurate with his work. Along similar lines, upon information and belief, Defendant began paying himself excessive compensation beginning in or about 2015, again in retaliation for Plaintiff's work at Nom Wah Tea Parlor, and in an effort to avoid paying Plaintiff a salary commensurate with his work.

92.     Defendant's breaches of his duty of loyalty have damaged Plaintiff and are ongoing. Of upmost priority to Plaintiff is the ability to operate and maintain the hard-earned and well-regarded reputation of Nom Wah Tea Parlor and the related Nom Wah brand. Defendant's unwillingness to treat Plaintiff as an equal, co-owner in NW, Inc. is a breach of Defendant's duty to loyalty to, among other things, treat Defendant as the co-owner of the NW, Inc. business that Plaintiff indeed is.

93.     Defendant's breach of his duty of loyalty to Plaintiff, which interferes with Plaintiff's ability to run Nom Wah Tea Parlor and NW, Inc., entitles Plaintiff to an injunction prohibiting Defendant from continuing as a co-owner of NW, Inc.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant awarding Plaintiff:

1.     An order declaring that Defendant has breached his fiduciary duty and/or his duty of loyalty to NW, Inc. and/or Plaintiff, an order enjoining Defendant from continuing to act as a co-owner of NW, Inc. at least until such time as the parties' rights and obligations with respect to NW, Inc. and the Nom Wah brand are adjudicated or

declared and an order enjoining Defendant and/or any corporate entity established by or under Defendant's control from any further use of the 2018 Mark until any and all rights to the 2018 Mark are decided;

2.      An order for an accounting of all appropriate books and records as alleged herein;

3.      An order for the disgorgement of Defendant's unjustly obtained profits as a result of the acts and omissions alleged herein in a precise amount to be determined following the requested accounting and at trial;

4.      A judicial declaration declaring the Fraudulent Assignment null and void as to the 2011 Marks;

5.      An order for the cancellation of Reg. No. 5,535,663;

6.      Damages in an amount to be determined at trial stemming from Defendant's fraud on the USPTO in connection with the Fraudulent Assignment;

7.      An order for permanent injunctive relief enjoining Defendant from any further use of the Nom Wah name and for damages in an amount to be determined at trial and

8.      An award of punitive damages, in an amount to be determined at trial; and

9.      An award of Plaintiff's reasonable attorneys' fees, costs and disbursements in this civil action; and

10.     An award of such other and further relief to which Plaintiff may be entitled as a matter of equity, or which the Court determines to be just and proper.

## JURY DEMAND

PLEASE TAKE NOTICE that the Plaintiff demands a trial of the issues by jury.

Respectfully Submitted:

**LEWIS & LIN, LLC**

David D. Lin, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorney for Plaintiff*